626

*In re* ADOPTION OF CHRISTINE MARIE OLIVA.—(THOMAS BENAVIDEZ *et al.*, Petitioners-Appellees, *v.* ARNUFLO OLIVA *et al.*, Intervenors-Appellants.)

Second District   No. 77-15

Opinion filed September 19, 1977.

NASH, J., dissenting.

Daniel J. Kramer, of Bassak & Kramer, of Yorkville, and Allen M. Anderson, of South Elgin, for appellants.

William F. Castillo, of Schaffner & Ariano, of Elgin, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Arnuflo and Isabel Oliva, the maternal grandparents of Christina Marie Oliva, a minor, appeal from the order of the circuit court of Kane County denying their petition to intervene in certain adoption proceedings. The child, Christina, was born out of wedlock on December 17, 1972, to Sylvia Oliva, daughter of the appellants herein. The petition to intervene states that the child's mother "surrendered and abandoned the child to the petitioners [Olivas] during January of 1976 and the child resided with the petitioners for four months from that date." While it was alleged in the argument made by the Olivas' counsel at the hearing that Christina lived with the Olivas "for all of her life," the petition itself indicated "that petitioners have cared for said Christina Oliva for approximately four

months beginning in January of 1976." The petition sets forth that early in 1976, while Christina and her mother, Sylvia, were residing with the Olivas, Sylvia represented to petitioners that she would allow them to adopt Christina; however, she demanded that the Olivas take care of Christina for a "trial period" of one year before she would allow adoption proceedings to begin. In June of 1976 the Olivas went on vacation and when they returned they found that Sylvia had given custody and control of Christina to Thomas and Juanita Benavidez (the child's godparents) and the child was then living in their home.

In July 1976, Thomas and Juanita Benavidez filed a petition to adopt Christina. Sylvia gave her consent, properly executed, and the natural father was served with notice and properly defaulted and his parental rights terminated. An interim order for adoption was entered on August 9, 1976.

■■ On September 8, 1976, the Olivas petitioned to intervene in the adoption proceedings and presented their petition to adopt Christina. After a hearing on the petition to intervene the trial court denied the petition.

In this appeal the Olivas contend that they should be allowed to intervene because they are the grandparents of Christina, that she lived in their home for "great lengths of time since the child's birth," and moreover, her mother had promised them to allow them to adopt the child.

They assert a legal basis for intervention in the adoption proceeding under section 26.1(2)(b) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2)(b)) which permits the applicant to intervene at the discretion of the court, "when an applicant's claim or defense and the main action have a question of law or fact in common." The Olivas argue that the question as to who has the right to adopt the child is a common question of law or fact in this case.

The Olivas say that the main consideration in an adoption proceeding is the best interest of the child sought to be adopted and that the best interest of the child in this case is to allow her to be adopted by her own grandparents. They cite the majority opinion of this court in *In re Jennings* (1975), 32 Ill. App. 3d 857, holding that a maternal grandmother had standing to file a petition seeking termination of the rights of a court appointed guardian. They also invoke *Zook v. Spannaus* (1966), 34 Ill. 2d 612, where the grandparents were awarded custody of their grandchildren over the court designated director of the Lutheran Child Welfare Association.

A careful reading of these two cases indicates that they are not apposite here. *Jennings* was a proceeding in the juvenile court and the decision was on the standing to intervene in the hearing to make the children wards of

the court and appoint a county probation officer as their guardian. Moreover, the decision held there was no legal basis for the appointment of the probation officer as guardian because the court had failed to adjudge the children wards of the court, and moreover, the petition filed subsequently to adopt the children was invalid because the mother's consent was not properly executed. We do not regard *Jennings* as a binding precedent in the case before us due to the different nature of the proceedings, the quite different nature of the parties involved, and the lack of jurisdiction to make the judgment as to wardship, as noted by the court. We regard a case involving the question of the right of a grandparent to intervene in a hearing to make a child a ward of the State as an entirely different matter from a grandparent's right to intervene in a private adoption where there is no question of the fitness of the adopting parents or the correctness of the mother's consent, but only the question whether the grandparents have a preference, which gives them a right to intervene.

The *Zook* case, likewise, has no relevance to the case at hand. In the first place, *Zook* was not an adoption case—it involved only a question of custody and was brought on a *habeas corpus* petition. There was evidence in the case of high-handed and improper conduct on the part of those to whom custody was awarded and a failure by the court to follow the requirements of the Family Court Act (Ill. Rev. Stat. 1963, ch. 23, par. 2026). The appellate court granted the petition for *habeas corpus* on the basis of a complete lack of due process all along the line. There is no question of lack of due process in the case before us or of the jurisdiction of the court to enter an adoption decree and the *Zook* case, therefore, has no relevance to this case.

On the other side of this question, the recent Illinois Supreme Court decision in *Chodzko v. Chodzko* (1976), 66 Ill. 2d 28, declined to give special status to the grandfather, even in a matter of visitation rights. In that case the divorced mother, to whom custody had been granted, objected to the visits of the grandfather because of his alleged disruptive influence on the child. The court said her wishes should prevail since she had the day-to-day responsibility of the child's upbringing and had been granted custody by the divorce decree.

Nor do we see any significance in the language quoted by the appellants from section 26.1(2)(b) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2)(b)) sofar as the question presented here is concerned. The language "[u]pon timely application anyone may *in the discretion of the court* be permitted to intervene in an action: * * * (b) when an applicant's claim or defense and the main action have a question of law or fact in common" (emphasis added) is purely permissive and gives no right to the applicant. Moreover, it is by no means clear that the

quoted language was intended to apply at all to a situation such as that presented here. There is no common question of law or fact in this case. The question is *whether* the appellants have a preference—since on no other basis than a legal preference could they intervene, inasmuch as the adoption had already reached the point of an interim order for adoption when the petition to intervene was filed and there is no allegation of the unfitness of the adopting parents or irregularity in the adoption proceedings. We doubt that an assertion of a preference presents a common question of law or fact in an adoption proceeding merely because both parties wish to adopt the same child. The question raised by the appellants is purely adversary to the rights of the adopting parents and it is not a question common to both parties.

In any event, as noted above, the trial judge has discretion and we cannot say he abused his discretion in declining to permit the appellants to preempt the adoption proceedings.

■■ The appellants argue that the wishes of the mother are not controlling, since the mother cannot control the adoption after she gives her consent. This is true and the court must make the determination as to the fitness of the adopting parents, but the wishes of the mother can legitimately be taken into account as an element to be considered. It may certainly be assumed that the mother in this case wishes the best home possible for her child and her deliberate choice of Thomas and Juanita Benavidez, after having lived with the child in the home of her parents, the Olivas, is significant as indicating the mother's judgment as to which home is best for the child's future, as between the contending parties.

We do not wish to be understood in this opinion as denigrating the natural right of grandparents to have custody of or to adopt their grandchildren in a proper case. All other things being equal, they may be the most logical persons to have custody or to adopt, and this is especially true where they have played an important part in the raising of the child. A petition to intervene by grandparents, due to their unique relationship to the child must, as it was here, be given careful consideration, for it is implicit in their relationship to the child that they have great solicitude for the child's well being and happiness. This is well recognized in the Illinois cases. (See *Jennings* and cases cited therein.) But, in the circumstances of this case there is no legal basis authorizing a *right* to intervene and it was a matter clearly within the discretion of the court. The circumstances were peculiar here for the evidence indicates that a sister of the child's mother also had a daughter out of wedlock and she returned home with her child, who also resides with the grandparents, who are the appellants here. It was not the normal home situation and the child's mother may well have concluded that she wished a more normal and regular situation for the upbringing of *her* child.

We note also that there is a grave matter of public policy implicit in the contention of the grandparents that they have a right to intervene because they are the grandparents and are the preferred parties in an adoption case. In the absence of a statute giving the grandparents a preference (which might be unconstitutionally discriminatory) where are we to stop in allowing relatives to block a proposed adoption? Is an uncle or aunt in a less favorable position than a grandparent? Indeed, an adult cousin may have closer ties to the child than a grandparent. In many countries it is customary for a brother to adopt his deceased brother's children and the cases are legion in both fact and fiction, *viz.*, *David Copperfield* and *Tom Sawyer*, of an aunt adopting a deceased sister's child. How can we draw the line at grandparents? Are we to subject every adoption to the hazard of being disrupted or preempted by an intervening relative who learns of it midway in its course? While consents cannot legally be required of such relatives, their rights to intervene might very well cause further delays and "red tape" in the adoption process and pose to prospective adopting parents and agencies the frustrating question whether to ignore such a possibility and be unpleasantly surprised half-way through the adoption, or to invite trouble by attempting to get some sort of waiver from the close relatives of the child. Nor can we overlook the possibility that such relationship might be exploited for the benefit of the relatives, disregarding the child's best interests. A decision which invites such unwelcome possibilities would, we think, be contrary to public policy.

The trial court found that in the absence of any allegations of unfitness on the part of the adopting parents or any question relative to the mother's consent or the termination of the putative father's rights, there was no legal basis for the petition to intervene. We agree.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD, J., concurs.

Mr. JUSTICE NASH, dissenting:

I respectfully dissent. While I agree with the majority view that the appellant-grandparents may not intervene in the pending adoption case as a matter of right, I believe the trial court abused its discretion in denying them permissive intervention in this case.

Section 26.1(2) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2)) was designed to liberalize the former strict intervention practice and to relax the requirement of a direct interest in a lawsuit. The intervenor, however, must still have more than a general interest in the proceedings and must have an enforceable or *recognizable* right in the

subject matter of the lawsuit. (*People ex rel. Hanrahan v. Village of Wheeling* (1976), 42 Ill. App. 3d 825, 834, 356 N.E.2d 806, 813.) This child lived in petitioners' home, they and the child's mother had previously planned that they should adopt the child and they are the maternal grandparents of the child. These facts should be sufficient to demonstrate petitioners have a special interest in the proceedings and a recognizable right in the subject matter so as to be permitted to be heard. I do not believe such an exercise of discretion would be either disruptive or in any way preempt the rights of those who first reached the courthouse with their petition for adoption. It appears likely the trial court would also then have the benefit of more evidence upon which to base its decision than it will receive in a closed adoption hearing attended only by the earlier petitioners and their counsel. I suggest little weight should be given, at this stage, to the consent-to-adopt form signed by the child's mother and her indicated preference there; by it she simply gave up her rights to the child for whatever considerations seemed appropriate to her. The trial court will never see her to weigh those considerations in making its decision as to what is in the best interest of the child. I do not think the parent who is surrendering her child permanently should have the subsequent control over the matter as is demonstrated here.

Finally, I suggest the allegations as to unfitness, a mother's consent or a putative father's rights are too restrictive if necessary, as the majority holds, before the court can even consider the exercise of its discretion regarding intervention in an adoption proceeding. These limitations on the court may well prevent it from hearing that which it wishes to hear to make an adoption judgment.