608 A.2d 10

In re ADOPTION OF Melanie Lynn
HESS and Matthew James Hess.

APPEAL OF FAMILY SERVICE.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1990.
Decided April 29, 1992.

William C. Crosswell, Lancaster and George Hay Kain, III, York, for amicus, York County Children and Youth Services.

Elizabeth Hambrick–Stowe, Lancaster, for Carol and David Hess.

A. Anthony Kilkuskie, Ephrata, for John and Jane Doe.

Lawrence F. Stengel, Lancaster, for guardian ad litem, Melanie and Matthew Hess.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

The instant appeal presents the Court with the issue of whether grandparents may be permitted to participate in proceedings for the adoption of their grandchildren. The appeal arises from the Superior Court's reversal of an order of the Lancaster County Common Pleas Court, Orphans' Court Division, dismissing the grandparents' Complaint for Custody and Petition to Intervene in state adoption proceed-

ings instituted after the parents' rights to the grandchildren were terminated.

Sometime prior to June 15, 1987, Melanie Lynn and Matthew James Hess, four and five-year old siblings, were placed in the custody of the Family and Children's Service of Lancaster County by their birth parents, Tina Marie Hess and Kenneth John Hess. On September 25, 1987, Tina Marie Hess and Kenneth John Hess executed Consents to Adoption. At approximately the same time, the Family and Children's Service placed the children in their adoptive home. On November 6, 1987, Reports of Intent to Adopt were filed by persons having custody of Melanie Lynn Hess and Matthew James Hess.

The Family Service of Lancaster County filed a Petition to Confirm Consents pursuant to the provisions of Section 2504 of the Adoption Act. A hearing on the petition was scheduled for November 24, 1987, and proper notice of the hearing was sent to the natural parents.

After the hearing, a Final Decree was issued by the trial court confirming the consents and terminating the parental rights of Tina Marie Hess and Kenneth John Hess. This Final Decree transferred custody of the children to the Family Service of Lancaster County, and granted the Family Service "... full authority to consent to the adoption of the minor children ... without further consent of or notification to Tina Marie Hess or Kenneth John Hess."

The grandparents have asserted repeatedly that they were not informed that the children were being placed with Family Services in June, 1987. They claim that when they were finally told of the parents' intentions to put the children up for adoption, they attempted to obtain from Family Services information as to the children's whereabouts and sought an opportunity to express their desire to provide a home for the children and to reunite them with their siblings. The grandparents claim that their efforts were consistently rebuffed by Family Service, which refused to give them any information until January of 1988 when they were notified that the parental rights had been

terminated. At that time, Mr. and Mrs. Hess filed a Complaint in Equity seeking to enjoin the adoption, to obtain leave to intervene, and other relief. The complaint was dismissed with leave to refile the Complaint in the Orphans' Court.

On March 17, 1988, the grandparents filed in the Orphans' Court a "Petition to Intervene and Stay Proceedings," a "Complaint for Custody," and "Partial Custody and/or Visitation," claiming that their personal constitutional rights, as well as provisions of the Adoption Act,[1] the Children and Minors Act,[2] and the Juvenile Act,[3] entitled them to intervene in the adoption proceedings and to seek custody of their grandchildren after the natural rights had been terminated. The trial court granted the preliminary objections of Family Service, and dismissed the grandparents' petition and complaint without hearing.

The grandparents appealed to the Superior Court, which reversed the trial court's order, stayed the adoption proceedings, and remanded the matter to the trial court for hearings on the grandparent's petition and complaint. *In re Adoption of Hess*, 386 Pa.Super. 301, 562 A.2d 1375 (1989). The Superior Court found that the trial court, in ascertaining the best interests of the child, must consider *all* evidence bearing on those interests. *Id.* Where, as here, the party seeking to intervene in the action has lived with the child, has obtained custody of his or her siblings, and has averred that the child's best interests are contrary to those asserted by the agency, the trial court's summary dismissal of that party's complaint amounts to a default of its responsibility to determine the child's best interest. Family Service appealed that decision to this Court.

Appellant claims that the Superior Court abused its discretion in reversing the Court of Common Pleas. Family Service argues that once the biological parents voluntarily terminated their parental rights and placed the children

1. 23 Pa.C.S. § 2101, *et seq.*
2. 23 Pa.C.S. § 5301, *et seq.*
3. 42 Pa.C.S. § 6301, *et seq.*

with the agency for placement in an adoptive home, the rights of other biological relatives also cease. Appellant submits that a contrary result would call into question the propriety and finality of adoptions in the Commonwealth. Additionally, Family Service contends that permitting appellees to intervene is unnecessary, because Family Service has no intention of consenting to the grandparents adoption of the children. Appellant insists, and the trial court agreed, that the grandparents have no recognized legal interest in the adoption proceedings and, therefore, are not entitled to participate. As the trial court stated,

> The grandparents are not guardians of the children, nor are they the custodians of the adoptees since by decree of termination custody was awarded to the Family and Children's Service with authority to consent to the adoption. The consent of the grandparents is not required since they are not a party in interest in this adoption proceedings. Thus, the preliminary objections to the Petition to Intervene and Stay Proceedings must be sustained.

> Since the grandparents are not a party in interest in the adoption proceedings, they have *no right to appear during the pendency of such proceedings* and demand custody, partial custody and/or visitation.

*In re Adoption of Hess,* No. 221½, 1987 slip op. at 3–4 (Court of Common Pleas of Lancaster County, April 21, 1988) (emphasis added).

Appellees argue, however, that the Superior Court correctly determined that the trial court's refusal to consider the grandparents' assertions was an abdication of its duty to consider *all* facts bearing upon a determination of the child's best interests. For the reasons that follow, we agree with appellees' assertions, and we affirm the Superior Court.

Rule 2327 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 2327, governs intervention in a cause of action. In pertinent part, the rule provides the following guidelines:

### Rule 2327. Who May Intervene

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

\* \* \* \* \* \*

(3) such person could have joined as an original party in the action or could have been joined therein.

As previously stated, the trial court found that the grandparents had no interest in the proceedings. The trial court's determination, however, begs the question of whether the grandparents were ever entitled to inject themselves into a series of proceedings designed to effectuate the best interests of two of their grandchildren, especially where, as here, they sought to adopt the children. Under these guidelines, and for the following reasons, the grandparents should have been permitted to intervene.

■ We begin our analysis by noting that the issues raised in this appeal, while they concern matters of custody, must be considered as adoption issues. The court obtained jurisdiction over this matter by the filing of the necessary papers under the Adoption Act. Those filings set in motion proceedings to have Melanie and Matthew placed with adoptive parents. The grandparents' petition sought to intervene in the adoption proceedings. Wherever possible, we must be guided by the specifications of the Adoption Act in making our determination. *See, e.g., Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 445 A.2d 1314 (1982).

The Adoption Act sets forth specific procedures that must be followed by a party seeking to adopt a child. Under its provisions, once parental rights are terminated, "[a]ny individual may become an adopting parent." 23 Pa.C.S. § 2312. A party seeking to adopt a child must first file a Report of Intention to Adopt. 23 Pa.C.S. § 2531(c). A report is also filed by the intermediary who arranged the adoption, and an investigation is conducted to determine the suitability of the adoption. 23 Pa.C.S. § 2535. Once the proposed adoption is determined to be feasible, the adoption procedure is commenced. 23 Pa.C.S. § 2701 *et seq.* A Petition to Adopt must be filed, and the court shall obtain any necessary

consents to the adoption. 23 Pa.C.S. § 2711(a).[4] The court then holds a hearing for a final determination of whether the adoption decree should be entered. 23 Pa.C.S. § 2721. At all stages of the proceedings, the best interest of the child is the paramount consideration. See, 23 Pa.C.S. § 2902(a).[5]

■ While Family Service correctly argues that no presumption exists in favor of the grandparents, it is equally true that no presumption exists against them. Conversely, the Act contemplates that a grandparent might choose to adopt his or her grandchild, and allows the grandparent to benefit from the relationship to the child by relieving the grandparent of the obligation to file a Report of Intention to Adopt. 23 Pa.C.S. § 2531(c). Thus while the Act does not reflect a preference for a grandparent's adoption, it clearly does not exclude grandparents from being considered as prospective adoptive parents.[6] A grandparent seeking to adopt a grandchild also must indicate his or her relationship to that child in the Petition to Adopt. 23 Pa.C.S. § 2701(1). This requirement indicates that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration.

Additionally, under the Children and Minors Act, 23 Pa. C.S. § 5301, *et seq.*, grandparents have the right to seek visitation and/or custody of their grandchildren until the children are adopted by someone other than a stepparent or grandparent. 23 Pa.C.S. §§ 5313, 5314. This statute demonstrates an intention on the part of the Pennsylvania

4. See *infra.* n. 5 for the text of the statute.
5. § 2902. Requirements and form of decree of adoption
   (a) General rule.—If satisfied that the statements made in the petition are true, that *the needs and welfare of the person proposed to be adopted will be promoted by the adoption* and that all requirements of this part have been met, the court shall enter a decree so finding and directing that the person proposed to be adopted shall have all the rights of a child and heir of the adopting parent or parents and shall be subject to the duties of a child to him or them.
   23 Pa.C.S. § 2902 (emphasis added).
6. Indeed, our society has many examples of grandparents successfully raising their grandchildren.

legislature to encourage the maintenance of family relationships wherever possible, a policy which is especially relevant in this instance, because the grandparents already have custody of the children's siblings. *See, e.g., Albright v. Commonwealth ex rel., Fetters*, 491 Pa. 320, 421 A.2d 157 (1980) (grandparents given custody as opposed to parents where grandparents would keep siblings together); *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59 (1985). Moreover, it illustrates the expectation that grandparents in some instances will desire to adopt their grandchildren.

■ We next address Family Service's contention that, ultimately, the grandparents' intervention will be an exercise in futility. Family Service asserts that since the rights of the children's natural parents have been terminated, and the agency stands *in loco parentis* to the child, 23 Pa.C.S. § 2521(c),[7] its consent is required under 23 Pa.C.S. § 2711(a)(5)[8] before an adoption can take place. The agency argues that it does not intend to consent to an adoption by the grandparents, and offers the bald assertion that the possibility exists for collusion between the grandparents and the natural parents. See Appellant's Brief at p. 9. Thus, the agency contends that permitting the grandparents to seek custody or otherwise become involved in the children's lives will only add to the instability in their lives.

7. § 2521. Effect of decree of termination
\* \* \* \* \* \*
(c) Authority of agency or person receiving custody.—An agency of person receiving custody of a child shall stand *in loco parentis* to consent to marriage, to enlistment in the armed forces and to major medical, psychiatric and surgical treatment and to exercise such other authority concerning the child as a natural parent could exercise.
1980, Oct. 15, P.L. 934, No. 163 § 1, effective Jan. 1, 1981.

8. § 2711. Consents necessary to adoption
(a) General Rule.—Except as otherwise provided in this part, consent to an adoption shall be required of the following:
\* \* \* \* \* \*
(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

■ The flaws in appellant's argument on this point are readily apparent. First, as previously stated, it is clear from the Act that the court's concern is not the will of the agency but the best interests of the child. Under 23 Pa.C.S. § 2535(b), once Reports of Intention to Adopt are filed, an investigation is conducted by a person designated by the court to ascertain whether the proposed placement is suitable for the emotional needs and welfare of the child. The Act directs the court, upon a hearing on a Petition for Adoption, to take testimony and, if necessary, to order an investigation to decide whether the granting of the Petition suits "the physical, mental, and emotional needs and welfare of the child." 23 Pa.C.S. § 2724(b). The Act also permits the court, "whenever it is in the best interests of the child," to appoint counsel or a guardian to represent a minor child. Thus, the Act clearly focuses on the needs of the child, reflecting the policies expressed at common law. *See, In re Hookey,* 419 Pa. 583, 215 A.2d 860 (1966); *In re Stone,* 398 Pa. 190, 156 A.2d 808 (1959). *See, e.g., In re Adoption of Jacono,* 426 Pa. 98, 231 A.2d 295 (1967). *See also, Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 445 A.2d 1314 (1982). The agency's wishes, therefore, are to be considered in light of that objective.

■ Moreover, despite the agency's adamant insistence that it will not consent to the adoption by the grandparents, the Act makes clear that the court has the final burden of determining whose consent is necessary. The language of 23 Pa.C.S. § 2713(2) provides that "[t]he court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when ... the adoptee is under 18 years of age and has no parent living whose consent is required." Under the facts of this case, the rights of the children's natural, living parents have been terminated, so their consent is not required. Accordingly, it seems clear that if the court determines that the agency's consent is being withheld unreasonably, the court may dispense with the requirement of § 2711(a)(5) that the agency consent to the adoption. The agency's implicit assertion

that its opinion will somehow control the outcome of the adoption is therefore baseless.[9]

Finally, we think it important to emphasize that by permitting the grandparents to intervene, we are not guaranteeing that they will prevail. Certainly there may be legitimate factors, such as health or infirmities, which might be construed against the grandparents. Nevertheless, they should be permitted to participate in the proceeding just as any other individual or individuals who seek to adopt a child. A child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard. Therefore, at the very least, the grandparents should have been welcomed by the agency to offer what information they could in relation to their grandchildren's best interests. That the agency has taken the opposite position is regrettable; that the court sanctioned the agency's actions, without a substantive justification, as the Superior Court determined, is completely unacceptable.

Accordingly, the order of the Superior Court is affirmed.

FLAHERTY, J., files a dissenting opinion in which ZAPPALA and CAPPY, JJ., join.

ZAPPALA, J., files a dissenting opinion.

FLAHERTY, Justice, dissenting.

Understandably the majority has strained to reach a result which does not appear harsh, but in doing so has seriously frustrated the clearly expressed legislative scheme of adoption. Thus, I must dissent.

The children who are the subject of the present adoption proceedings, Melanie and Matthew Hess, are a sister and brother, who, at the time this litigation commenced, were five and four years of age respectively. Melanie and Mat-

9. We are shocked that the agency, which is responsible for representing the interests of the children, would refuse to entertain any evidence bearing on that determination which may be contrary to their own personal views. We are certain that in light of this opinion, the agency would consider the request of the grandparents for adoption with the objectivity that is applied to any other applicant.

thew have four siblings, but the siblings are not involved in this case. At various times during their lives, Melanie and Matthew, their siblings, and their natural parents resided with their maternal grandmother and stepgrandfather, the appellees herein. This was due to the fact that the natural parents had difficulty in securing suitable housing for themselves and their six children. During much of this time, substantial care for all of the children was provided by the grandmother.

In 1985, the natural parents informed the grandparents that they had located other housing, and, hence, removed all of their children from the grandparents' home. The grandparents later learned, however, that all of the children had been placed with a social service agency in Lancaster County. Several of the children, but not the two involved in this case, were soon returned to the custody of their grandparents. In 1986, Melanie and Matthew were returned to their natural parents. In the spring of 1987, however, they were again removed from the custody of their natural parents and placed with the social service agency. The grandparents then contacted the agency and obtained custody. In June of 1987 the natural father removed Melanie and Matthew from the grandparents' home and took them to Children and Family Services of Lancaster County (Family Service).* Later efforts by the grandparents to have the two children returned by Family Service were to no avail.

The natural parents then voluntarily relinquished their parental rights with respect to Melanie and Matthew. A decree terminating their parental rights was entered under 23 P.S. § 2504, and custody of the two children was awarded to Family Service. Family Service placed the children

---

* Inasmuch as the children had been in residence with the grandparents for a period of only a few months when they were removed by the father, this case does not present a situation where the statutory provision allowing grandparents certain rights of visitation or partial custody, 23 Pa.C.S. § 5313, could have been invoked. This provision states that it is applicable where a "child has resided with his grandparents ... for a period of 12 months or more and is subsequently removed from the home by his parents...."

with proposed adoptive parents who filed a petition for adoption.

Upon learning that a petition for adoption had been filed, the grandparents filed a petition to intervene, to stay the adoption proceedings, and to obtain custody of Melanie and Matthew. They alleged that, inasmuch as they had previously taken care of the two children and were in custody of their siblings, the best interests of Melanie and Matthew would be served by awarding custody to the grandparents. Family Service filed preliminary objections alleging that the grandparents lacked standing to intervene. The preliminary objections were sustained by the Court of Common Pleas, and the petition was dismissed. The Superior Court reversed, holding that the grandparents had standing to intervene, and reasoning that consideration of the best interests of the children favored allowing intervention by the grandparents. I disagree, and would reverse.

It is certainly understandable that grandparents may be concerned about adoption proceedings involving their grandchildren. Indeed, in perhaps most families grandparents develop an interest and concern for their grandchildren that is not readily extinguished by a termination of the parents' rights. Nevertheless, under basic principles of law governing standing and under the legislative policy clearly expressed in the adoption laws, it must be concluded that grandparents have no legally cognizable interest in the adoption of their grandchildren.

Where, as here, the rights of the natural parents have been terminated by a court decree, the effect is to terminate the interests of others whose relationship to the children is derived from the parental relationship. This is a necessary consequence of our adoption laws which effectively sever a child from its own family tree. As stated in *Harvey Adoption Case*, 375 Pa. 1, 3, 99 A.2d 276, 277 (1953), "a decree of adoption terminates forever all relations between the child and its natural parents, *severs it entirely from its own family tree* and engrafts it upon that of its new parentage: *Schwab Adoption Case*, 355 Pa. 534, 536, 50 A.2d 504, 505."

(Emphasis added). Accord *Chambers Appeal*, 452 Pa. 149, 154, 305 A.2d 360, 363 (1973). While it may be viewed as a harsh policy to treat a child as severed from its own family tree as a result of an adoption, the policy is a sound one. The rationale therefor was aptly described in *Faust v. Messinger*, 345 Pa.Super. 155, 160–61, 497 A.2d 1351, 1353 (1985), appeal dismissed, 514 Pa. 286, 523 A.2d 741 (1987):

> The entire body of law pertaining to adoption harmonizes in order to place an adopted child in the shoes of a natural child in all legal respects, failing only to alter the biological makeup of the child. The intention and result of the law is to enfold an adopted child in its new family so as to be indistinguishable from his new siblings in every possible respect.
>
> Rights of inheritance are changed; parental and filial rights and duties are altered; birth records are substituted; adoption records are impounded. In every possible respect, all family relationships are thus reestablished within the adopting family and *all ties with the natural family are eradicated.*

(Emphasis added).

Where, as in the present case, parental rights have been terminated but an adoption has not yet occurred, the termination of parental rights logically serves as the point in the adoption proceeding at which all ties with the child's natural family are ended. Once those ties have been severed, there is no basis for intervention by the natural family. The grandparents in this case lack standing to maintain an action, therefore, because they have no legally enforceable interest in the outcome of the adoption proceeding. See generally *South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 86, 555 A.2d 793, 795 (1989) (standing requires a legal interest in the subject-matter of the litigation). See also Pa.R.C.P. 2327(4) (permitting a person not a party to an action to intervene where "the determination of such action may affect any legally enforceable interest of such person ...").

Further, permitting grandparents to intervene in an adoption proceeding, after the natural parents have consented to an adoption and their parental rights have been terminated in full compliance with the Adoption Act, 23 Pa.C.S. § 2101 et seq., would frustrate the adoption process established by the legislature. Clearly, the legislature intended that the consent of the natural parents would be sufficient to permit an adoption to occur. See 23 Pa.C.S. § 2501–2504 (voluntary relinquishment of parental rights permits an adoption to proceed).

The legislature has not made the participation of grandparents a factor in the adoption process, where the consent of parents has been given. Indeed, *notice* to grandparents of hearings to confirm parental consents to adoption is not even required, except where the parents are under 18 years of age. 23 Pa.C.S. § 2503(b); 23 Pa.C.S. § 2504(b). The parents of Melanie and Matthew were 25 and 34 years of age at the time they executed their consents to adoption. Significantly, too, the legislature has expressly provided that the *consent* of grandparents is not required when parents wish to relinquish their parental rights, even where the parents are under 18 years of age. 23 Pa.C.S. § 2501(b); 23 Pa.C.S. § 2502(b). This evinces a plain legislative intent that grandparents are not to be regarded as having a cognizable legal interest in the proceeding.

Moreover, it would be incongruous to allow grandparents to participate in adoption proceedings in cases where the natural parents are statutorily excluded from participation. In 23 Pa.C.S. § 2521(a) it is provided that a decree terminating parental rights "shall extinguish the power or the right of the parent to object to or receive notice of adoption proceedings." The legislature surely did not intend that a child's other biological relatives would be free to participate in proceedings from which the natural parents were excluded. Such a scheme would defy logic and would jeopardize the smooth and efficient functioning of the adoption process. It would also provide an avenue for relatives to frustrate and circumvent decrees terminating parental

rights. Quite plainly, the legislature has established an adoption process that makes adoption dependent upon the actions of the parents alone, rather than upon the actions of other biological relatives. To permit biological relatives such as grandparents to participate in the adoption process, changes in the existing legislative policy would be required.

Allowing intervention in the name of the best interests of the children would inadequately take into account that the legislatively established adoption process was designed to fully safeguard the interests of proposed adoptees. Once parental rights have been terminated, the best interests of the child are, of course, paramount in any adoption proceeding. *In re D.J.Y.*, 487 Pa. 125, 132 n.*, 408 A.2d 1387, 1391 n.* (1979). Nevertheless, while the best interests govern the selection of an adoptive parent, it does not follow that intervention by persons not contemplated by the legislature should be allowed. If the "best interests" rationale is invoked to permit intervention by grandparents in adoption proceedings, conceivably the door may be open also to others, related or not, and thus the time-honored legislatively ordained plan of adoption may be seriously impaired. The legislative scheme, however, is quite clear, and serves good purpose; thus, I do not find basis for grandparents to intervene.

It may be noted, too, that a decision that grandparents lack standing to intervene would be in accord with the rule followed in most other jurisdictions, in that intervention by grandparents has generally been denied where natural parents have consented to an adoption. See *Christian Placement Service v. Gordon*, 102 N.M. 465, 697 P.2d 148 (1985) (compilation of cases from various jurisdictions); *In re Nicholas*, 457 A.2d 1359 (R.I.1983); *Hayes v. Watkins*, 163 Ga.App. 589, 295 S.E.2d 556 (1982); *Krieg v. Glassburn*, 419 N.E.2d 1015 (Ind.App.1981); *Muggenborg v. Kessler*, 630 P.2d 1276 (Okla.1981); *Petition of Benavidez*, 52 Ill. App.3d 626, 10 Ill.Dec. 362, 367 N.E.2d 971 (1977).

In short, the Adoption Act does not contemplate intervention by grandparents in proceedings of the present sort.

The decision of the Superior Court, holding to the contrary, should be reversed.

ZAPPALA and CAPPY, JJ., join this dissenting opinion.

ZAPPALA, Justice, dissenting.

The majority's opinion has emotional appeal, but lacks judicial restraint. I sense an underlying struggle to understand what forces would lead parents to make a decision that would separate their children from siblings and other blood relatives. I do not pretend that I know or understand, either. I do understand, however, that the law permits parents to terminate their parental rights. I understand, too, that as a jurist I cannot allow empathy to displace the law.

"A child's interests are best served when all those who demonstrate an interest in his or her welfare are allowed to be heard." (Op. at 15) The majority touts "the best interests of the child" as if it were a battle cry. It is stirring, but empty of meaning when used so. The adoption proceeding is not a public forum where anyone, even a relative, may attempt to persuade the court that placement of the child should be with the applicant.

I cannot conceive that the majority would allow an individual who was unrelated to the child to intervene in the proceeding even if such individual was financially and emotionally capable of taking care of the child. Understandably so, for adoption is not a bidding process—even if well-intentioned. Why then should it be that a relative of the child will be permitted to intervene. A person who is not a party to an action may not intervene if the action will not affect any legally enforceable interest of the person. Interest is more than concern; it is a right that is legally enforceable.

In his Dissenting Opinion, Justice Flaherty has taken care to explain the difference between such concern and the interests of the parties under the Adoption Act. I need not

repeat his explication. The law may not be what the majority desires, but we are all illserved when it is ignored.

I dissent.