**In re Adoption of CJ-MW**

C.P. of Pike County, no. A11-1998.

*Stacey Beecher,* for petitioner.

THOMSON, *P.J.*, January 20, 1999—This opinion addresses this court's denial of a petition to terminate the parental rights of the above incaptioned minor. The court denied the petition because an adoption to the prospective adoptive parent, who filed the petition, was not in the best interests of the child. The court issues the following statement of issues, findings of fact, conclusions of law and discussion in support of its decree.

## STATEMENT OF ISSUES

(1) Is a termination of parental rights, for the purpose of a later adoption, in the best interests of a child, where the biological mother of a child will continue to play a role in the child's life and the child's maternal grandmother, who already has legal custody of the child, will serve as the child's mother?

## FINDINGS OF FACT

(1) At the time of the hearing on this matter, the biological father, mother, and child were the ages of 20, 22, and 3, respectively.

(2) The parents knew each other approximately two years before the pregnancy, however, the pregnancy was unplanned and the couple have never been married or lived together.

(3) Upon hearing of the pregnancy, the father recommended an abortion but the mother refused.

(4) Since the birth of the child (a male), the mother and the child have lived with the child's maternal grandparents, however, the maternal grandfather died approximately a year prior to the hearing.

(5) The maternal grandmother has acted as the primary caretaker for the child.

(6) The mother has not participated in caring for the child, describing her relationship with the child as more of a sibling relationship.

(7) The child appears to prefer the care and attention of its grandmother more than that of its mother.

(8) The mother works one day a week and the grandparents have provided the financial sustenance of the child.

(9) The child is medically insured through the medical insurance of its deceased grandfather.

(10) The father has had limited contact with the child. The father has only seen the child approximately three times, each time at the request of the mother.

(11) The father always has recommended the child be given for adoption.

(12) Both the father and mother believe they are to young to raise the child.

(13) The father was not working at the time of the hearing, but was seeking a part-time job.

(14) Parents have signed consent forms to have their parental rights terminated.

4

(15) The father didn't appear at the hearing to confirm his and the mother's consent to terminate their parental rights.

(16) The father has been paying support since child was two years old. He began making the payments after the mother obtained a court order requiring the support payments. The father contested paternity for the purpose of attempting to avoid his support obligation, but since the order he has been in full compliance, paying $50 a week.

(17) The mother is aware of the option of receiving counseling regarding her decision to terminate her parental rights but has decided not to seek such counseling.

(18) The mother believes she is not a financially secure source for the child's care.

(19) The mother is currently attending a college in pursuit of an associates degree. After obtaining the degree, she is interested in pursuing an bachelor's degree and ultimately a law school degree.

(20) Grandmother has consented to take custody of the child.

(21) The grandmother is 48 years old and has no apparent health problems.

(22) The grandmother acts as the main nurturer for the child, providing such care as seeking any needed medical care and disciplining the child.

(23) The grandmother works as a child care provider as an assistant director at the Kiddie Academy with daily working hours between 8:30 a.m to 4:30 p.m.

(24) The grandmother brings the child to the Kiddie Academy each day and the child receives care at the facility.

(25) The grandmother seeks medical care for the child and provides any treatment that he ever needs,

(bronchial blockage), and the grandmother disciplines the child.

(26) In addition to the income from her job, the grandmother receives $850 monthly from her deceased husband's pension plan and has significant other assets in the form of investments.

(27) The mother believes she is financially unable to care for the child.

## CONCLUSIONS OF LAW

(1) The best interests of the child are not served through a termination of the mother and father's parental rights for the purpose of an adoption by the grandmother.

(2) The child's best interests are for the grandmother to take legal custody of the child and care for the child while continuing her legal status as a grandparent.

## DISCUSSION

The main issue in this instant case is whether the voluntary relinquishment of parental rights to a grandmother for the purpose of an adoption is in the best interests of the child, where the mother of the child will continue to play a role in the child's life. It is the opinion of this court that such legal tinkering with a family structure is unnecessary in this case and poses a great risk for psychological harm to the child. Therefore, we have denied the request for a relinquishment of parental rights.

The grandmother of the subject child petitioned the court under 23 Pa.C.S. §2504. This section of what is referred to as the Adoption Act allows the potential adoptive parent to petition for the termination of parental rights if the parents of the child have failed to do so within 40 days after filing consents to an adoption.

After a hearing on the matter, a "court may enter a decree of termination of parental rights in the case of a relinquishment to an adult." *Id.* Thereafter, if a court does grant a petition for termination of parental rights, the interested party may petition for a hearing for the purposes of confirming an adoption.

In this case, the court held a hearing where the grandmother and mother attended, along with counsel. Only the grandmother and mother provided testimony, both of whom believed an adoption to the grandmother was the most favorable option for the child. During the hearing, the court indicated its concerns as to why the adoption did not serve the best interests of the child, namely, that it was simply unnecessary and possibly harmful to the child. However, the court took the case under advisement, and, soon after, the court denied the petition to terminate the parental rights of the child's biological parents.[1]

---

1. We note that this court denied a petition for the termination of parental rights as opposed to a petition for adoption because, in a case such as this, where the party intending to adopt is known at the time of the hearing on termination, it is appropriate for a court, if it wishes, to conduct a preliminary consideration as to the fitness of the potential adopting parent. Although such a consideration is not specifically proscribed by the Adoption Act, there is ample reason to believe that such preliminary considerations are in furtherance of the Act, namely, aiding in determining the best interests of the child. Where parents intend to terminate their parental rights as a condition precedent to a certain person becoming the adoptive parent, and the court finds that the adoptive parent is unfit at the time of the termination hearing, it would be, inter alia, very inefficient to terminate the parent's rights but then later deny the adoption. This sort of preliminary consideration appears to be especially appropriate under an adoption brought forth through 23 Pa.C.S. §2504, where the petitioning party is the prospective adoptive parent.

Since the denial of the petition, the grandmother has sought and obtained legal custody of the child through this court under a different case and file number. Although this court finds the granting of legal custody to the grandmother as being in the best interests of the child, we still believe that an adoption is unnecessary and poses too great a risk of creating harm for the child.

In examining the issues presented in an adoption case a court must remember that, "[a]doption is a statutorily created mechanism, unknown at common law." *Gibbs v. Ernst,* 538 Pa. 193, 206, 647 A.2d 882, 888 (1994). The Adoption Act must be strictly construed, and exceptions to the Act may not be judicially created. *Id.* Under the Adoption Act, it is the best interests of the child that governs over other interests in determining the propriety of an adoption. *In re Adoption of Hess,* 530 Pa. 218, 608 A.2d 10 (1992) (in this case, the other interest was a family service agency).

In interpreting the Adoption Act, the Pennsylvania Supreme Court has found, "that [while] no presumption exists in favor of the grandparents, it is equally true that no presumption exists against them." *Id.* at 224, 608 A.2d at 13. The court reasoned that the Adoption Act contemplates that a grandparent may adopt a child because of its provision which allows a grandparent to forego the execution of a report of intention to adopt. *Id.;* see also, 23 Pa.C.S. §2531(c). In stating that no preference exists in favor or against grandparents, the court noted that "our society has many examples of grandparents successfully raising their grandchildren." *Id.* at 224 n.6, 608 A.2d at 13 n.6.

In the instant case, the grandmother—through her counsel—essentially argued that because the basic requirements of the Adoption Act were satisfied, and no

opposition was raised by any parties, the court must allow the adoption to occur. We disagree with this conclusion. As already noted, the section of the Adoption Act under which the grandmother brought forth her petition states a court may enter a decree for termination of parental rights after the various parties have completed their respective responsibilities, but clearly does not require such. Instead, the provision allows a court the necessary deference to protect the best interests of a child when the interested parties have failed to do so, such as in this case. Thus, the Adoption Act does not appear to create a right, but a privilege for an adoption.

The parents and prospective adoptive parent of the subject child have failed to act in the best interests of the child because they have failed to consider the ramifications of an adoption to this child. As noted by the Superior Court,

"The entire body of law pertaining to adoption harmonizes in order to place an adopted child in the shoes of a natural child in all legal respects, failing only to alter the biological makeup of the child. The intention and result of the law is to enfold an adopted child in his new family so as to be indistinguishable from his new siblings in every possible respect.

"Rights of inheritance are changed; parental and filial rights and duties are altered; birth records are substituted; adoption records are impounded. In every possible respect, all family relationships are thus reestablished within the adopting family and all ties with the natural family are eradicated." *Faust v. Messinger,* 345 Pa. Super. 155, 160-61, 497 A.2d 1351, 1353 (1985), *appeal dismissed,* 514 Pa. 286, 523 A.2d 741 (1987).

Under the circumstances of the instant case, the grandmother and mother do not intend to eradicate the current

family structure, but, instead, they wish to create a legal fiction from their current relationships, all of which will only serve to confuse and harm the child in time. The mother testified that she believes she acts more as a sibling to the child and she will continue to play a similar role with the child.

We do not attempt to contradict that role reversals may be a reality for this family where a biological mother acts more as a sibling and a biological grandmother acts more as a mother, such relationships certainly would not be the first of their kind. However, an attempt to create a legal fiction in these relationships is inappropriate. Regardless of whether there is an adoption, the role the grandmother now serves can continue, especially now that she has legal custody. This court believes that it is, to say the least, confusing for a child to grow up in a household where its mother is known as its sister, its grandmother is known as its mother, and its father does not exist.

The grandmother testified that this confusing relationship is something that she will not hide from the child, but will explain it to the child "at an age where he could understand . . . that [the mother] is what she is." Hence, the child will likely live in a household with both its mother and grandmother, and he will constantly be reminded—simply by their presence—of the his biological relationships with those people. Hence, the parties wish to have an adoption of the child, but fail to consider the primary purpose for which an adoption serves.

As noted, an adoption serves to create an illusion of normality for a child, an illusion which eventually can become real if properly managed. The illusion becomes real when the legal relationships of the adoptive parents become natural to the child, providing a sense

of stability as if they always existed. Ideally, the adopted child will accept its adoptive parents as its true parents, if not its biological parents. Such acceptance by an adopted child comes most easily where there is a "clean break" with the biological family.

But, in the instant case, by the parties' own admission, the purpose of an adoption cannot be served because such an illusion will be ineffective. The child will not only know the truth of its heritage but will be constantly reminded of it by the presence of both the mother and grandmother in its life. Hence, an adoption in this family will serve as a tool ill-suited for its purpose. An adoption would not create stability for the child because it will always serve more as an illusion than a reality.[2]

In denying this decree for a termination of parental rights, we do not intend to demean the role of the grandmother. In this family, it appears that the grandmother is the glue holding it together against destructive forces largely created by the other family members' irresponsible behavior. However, the role that the grandmother now plays can be accomplished without an adoption and an adoption's corresponding confusing legal fictions. Without an adoption, the grandmother can continue to play the role of the main nurturer of the child, the mother can continue her education, and the father will continue his existence in the child's life—albeit with a very limited role.[3]

2. We do not mean to suggest that this adoption would be any more appropriate if the mother and grandmother attempted to hide the realities of the family. Allowing the child to believe its mother was its sister and its grandmother was its mother would create an incredible risk of harm to the child if it ever became aware of the true nature of the family, after he was told otherwise.

3. In denying this adoption, the court considered as a factor the fact that the child, if adopted, would no longer have two parents

The grandmother or mother never explained adequately why creating such legal fiction is necessary, despite being confronted with this court's concerns at the hearing. The grandmother did note that she thought that an adoption would secure the child with certain financial interests through the grandmother, but we fail to see why any such interests cannot be secured through other means without creating such potential harm. This court has granted legal custody to the grandmother, allowing her to participate in the child's life with the same power as its parents originally had, without unnecessarily altering the family structure, an alteration which would foreclose the possibility of a change in heart by those family members who are currently reluctant to persevere on with their responsibilities. Thus, we believed an adoption to be unnecessary.

Finally, we note that we do not believe our decision creates a presumption by this court against the adoption of a child by its grandparents. The court would not deny a grandparent's attempt at an adoption of a grandchild where she was attempting to create a new family structure, as opposed to renaming the members of an existing relationship. Thus, we certainly recognize there are many situations where it would be appropriate for a grandparent to adopt a grandchild. However, we must note that in examining the best interests of the child, it is impossible to create any general guidelines as to what is or is not an appropriate situation for an adoption.

---

but instead only one. Although this was not a determinative factor, this court considers the basic family structure of a mother and father to be quite valuable to our society and a child, and the existence of such a structure in a family serves as more than an amusing antiquity. Even where a father plays a limited role, a father's mere existence provides a child with a sense of identity that it ordinarily would not otherwise have.

Each request for an adoption must be analyzed according to the unique factual variables that every family possesses. Nonetheless, we believe that we have not created any presumptions against grandparents in adopting their grandchildren. Thus, for the aforementioned reasons, we issue the following decree:

## FINAL DECREE

And now, January 20, 1999, upon consideration of a petition to terminate parental rights for the purpose of a future adoption in accord with such termination, the court hereby denies the request for termination of parental rights.[4]

---

4. With the understanding of the moving party and the court, the court has issued a final decree as opposed to a decree nisi. The understanding being that the moving party's previous exceptions serve the same function as those that would be filed under Pa.R.C.P. 227.1.