J-A08011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.S.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.K. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2759 EDA 2019 |

Appeal from the Order Entered August 28, 2019
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): No. AD-18-0049

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 11, 2020**

Maternal Grandmother, S.K., appeals from the trial court's August 28, 2019 order and September 5, 2019 amended order[1] denying her petition for adoption of her grandson, M.S.S. (born 5/2011), and granting N.D.'s petition to adopt M.S.S.[2]  The trial judge's thoughtful consideration of record evidence,

_____

[1] Contrary to the trial judge's statement that the instant order granting N.D.'s petition to adopt becomes final after the timely filing of exceptions, Pennsylvania Orphans' Court Rule 8.1 states that "no exceptions or post-trial motions may be filed to any order or decree of the Orphans' Court."  **See** Pa.O.C.R. 8.1.  Thus, S.K. has properly appealed from the court's final orders dated August 28, 2019, and September 5, 2019.

[2] Although the caption only reflects the appeal as being taken from a single order dated August 28, 2019, S.K. actually appeals from both the August 28, 2019 order granting N.D.'s petition and the September 5, 2019 amended order.

with a focus on M.S.S.'s best interests, supports the decision to grant N.D.'s petition to adopt.[3]  Thus, we affirm.

M.S.S. was born in May 2011 in New York City where he lived with Mother and S.K.  M.S.S. has an older half-sister who lives with S.K.  In November 2012, the local New York child protective services agency became involved with M.S.S.'s parents, Mother and Father, due to Mother's substance abuse issues.  In February 2013, M.S.S. was found to be a "neglected child," as defined by New York's Family Court Act.  **See** N.Y. Family Court Act § 1012. As a result of that determination, M.S.S. was "paroled to  . . . Father,"[4] with agency supervision.  Order, 2/11/13.  In June 2013, Father was granted custody of M.S.S., to be supervised for 12 months by a child protective agency.  In June 2014, S.K. filed a petition against Father for visitation of M.S.S.  In July 2014, the court granted Father full and final custody of M.S.S and entered an order terminating New York's jurisdiction over the proceeding.

At the same time, the court also granted S.K. visitation rights as follows: from July 28-31, 2014, at 4 PM at S.K.'s residence; between August 29-September 7, 2014, as agreed upon between the parties; and every second

_____

[3] Judge Platt's commitment to this matter is most evident in several of her statements made at the conclusion of the adoption hearings.  **See** N.T. Adoption Proceeding, 8/19/19, at 172 (At "4:30 this morning my eyes were wide open and I'm thinking about M[.S.S.], and he's in my heart, and [S.]K[.] is in my heart, and [N.]D[.] is in my heart[.]"); **id.** (This was "[p]robably the most difficult case I've had in 22 years.").

[4] New York Family Court's use of the word "paroled" is akin to being granted physical custody of a minor in Pennsylvania.

and fourth weekend of the month after September 7, 2014. After December 2014, Father stopped making M.S.S. available for visits with S.K. On March 22, 2016, S.K. filed a petition in New York against Father to enforce the previously entered visitation order claiming that Father had failed to comply with the order by "do[ing] what he wants when he wants." Petition to Enforce, 3/22/16, at 1-2.

M.S.S. lived with Father and N.D., his paramour, until they separated in early 2015.[5] When Father and N.D. ended their relationship, M.S.S. moved to West Chester, Pennsylvania, where he lived with N.D. On April 1, 2016, Father executed a power of attorney (POA) appointing N.D. to have permanent physical and legal custody of M.S.S. The POA granted N.D. the right to authorize medical, dental and optical treatments for M.S.S. and gave her full power and authority to further M.S.S.'s education and enroll him in any activities.[6] On July 6, 2016, N.D. filed a complaint in Chester County against Father and Mother seeking custody of M.S.S. In her complaint, N.D. alleged that she "does not know of a person not a party to the proceedings who has physical custody of [M.S.S.] or claims to have custody or visitation rights with respect to [M.S.S.]." Custody Complaint, 7/6/16, at ¶ 9. On July 11, 2017, S.K. filed a complaint in Chester County against N.D., Mother, and Father,

_____

[5] At some point prior to their separation, Father and N.D. moved to Pennsylvania with M.S.S.

[6] Father and N.D. had been in a four-year relationship at the time he executed the POA.

seeking partial physical custody of M.S.S. and alleging she has standing to bring the action based on the New York visitation order. In October 2017, the trial court entered an order granting sole legal and physical custody of M.S.S. to N.D. On April 10, 2018, the court entered an order granting S.K. visitation, based on the following schedule: on April 10, 2018, from 4:30-5:30 p.m. and on April 21, 2018, from 1-6 p.m. p.m.; then, every four weeks on an agreed-upon Saturday or Sunday from 1-6 p.m. for six consecutive months; and then, weekend visits every eight weeks from an agreed-upon Saturday morning to Sunday evening.

On July 12, 2018, N.D. filed petitions to involuntarily terminate Mother's and Father's parental rights to M.S.S. On the same date, N.D. filed a petition to adopt M.S.S. After hearings on the termination petitions, the court terminated Mother's and Father's parental rights on December 20, 2018.

On January 9, 2019, S.K. filed a competing petition for adoption. Adoption hearings were held before Judge Platt on March 13-14, 2019, and August 16-19, 2019. On August 28, 2019, the court entered an order granting N.D.'s petition to adopt M.S.S. and denying S.K.'s petition. On September 5, 2019, the court entered an amended order reflecting M.S.S.'s new adopted name. S.K. filed timely notices of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, S.K. raises the following issues for our consideration:

(1) Did the [t]rial [c]ourt abuse its discretion and err in believing the needs and welfare of [M.S.S.] proposed to be adopted, also stated as the "best interests" standard, would

be promoted by the Adoption Petition of N[.]D[.] being granted and not the Adoption Petition of . . . [S.K.] being granted.

(2)     Did the [t]rial [c]ourt abuse its discretion and err in denying S[.]K[.]'s petition for adoption while granting the petition for adoption of N[.]D[.] despite knowing [N.]D[.] committed actions and non-actions for years of obstructive behavior aimed at thwarting [S.K.'s] involvement.

(3)     Did the [t]rial [c]ourt abuse its discretion and err in denying [S.K's] petition for adoption while granting the petition for adoption of [N.]D[.] when [N.D[.], obtaining a temporary guardianship of [M.S.S.] from the natural father, knowingly failed to comply with an existing New York State custody order granting [S.K.] visitation with M.S.S. and knowingly kept [M.S.S.] from his true family.

(4)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.]K[.]'s petition for adoption while granting the petition for adoption of N[.]D[.] while knowing and overlooking the actions of [N.]D[.], filing for custody of [M.S.S.] through the Chester County Court of Common Pleas and knowingly lying in her complaint for custody when she failed to comply with the Rules of Civil Procedure and lied and misled the court that there was no outstanding and existing New York State [c]ustody order granting [S.K.] visitation with M.S.S.

(5)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.K.'s] petition for adoption while granting the petition for adoption of N[.]D[.] while knowing and overlooking the continuing actions of [N.]D[.] in failing to follow Chester County orders granting [S.K.], in response to her own custody complaint in Chester County, visitation and phone contact, when [N.]D[.] failed to set up visits and phone calls on a consistent basis between [M.S.S.] and [S.K.], sister, aunt, and other family members from 2016 through 2019 leading up to the time of the adoption decision of the trial court.

(6)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.K.'s] petition for adoption while granting the petition for adoption of N[.]D[.] while knowing and overlooking the continuing actions of [N.]D[.] in swearing to and filing legal documents, including but not limited to, maintaining

[M.S.S.] had post[-]traumatic stress disorder ([]PTSD[]) and had undergone years of needed therapy when, in fact, it was shown through testimony at the four[-]day trial that this was untrue.

(7)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.K.'s] petition for adoption while granting the petition for adoption of N[.]D[.] when it gave too much weight and credence to the "strong, repeated preference" of a[] seven[-][-]year[-]old child [to live with the person] who maintained control of him for the vast majority of the time leading up to the time of his meeting and discussion with the [trial] court and for failing to acknowledge that a seven[-]year[-]old child was obviously influenced by the current guardian who was housing and feeding him while continuously maintaining onerous influence upon [M.S.S.].

(8)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.K.'s] petition for adoption while granting the petition for adoption of N[.]D[.], knowing that [S.K.] wanted [M.S.S.] to be raised with his family in New York with his own sister, when it ignored its own findings in an earlier court case when it stated that the policy in Pennsylvania is that, absent compelling reasons to the contrary, siblings should be raised together and that this factor is not diluted when the children involved are half[-]brothers and sisters and that this decision also flies in the face of Family Finding and Kinship Care statutes of the [s]tate of Pennsylvania which mandates that [f]amily should be the first resource for a child in this type of situation.

(9)     Did the [t]rial [c]ourt abuse its discretion and err in denying . . . [S.K.'s] petition for adoption while granting the petition for adoption of N[.]D[.] when it relied on the opinions of the [guardian *ad litem* (GAL)], the child's counsel[,] and his school counsel[]or when they showed obvious bias for [N.D.] and against [S.K.] throughout the proceedings in court.

Appellant's Brief, at 14-17.

This Court reviews a determination under the Adoption Act for an abuse

of discretion. ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016). We will not

- 6 -

conclude that there is an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* (citation omitted).

Once parental rights have been terminated, anyone may become the adoptive parent, and the best interests of the child is the controlling factor in a court's decision regarding adoption. *In re Adoption of Hess*, 608 A.2d 10, 13 (Pa. 1992). We have stated, "[i]n both custody and adoption matters, our paramount concern is the best interests of the child. This 'best interests' determination is made on a case-by-case basis, and requires the weighing of all factors which bear upon a child's physical, intellectual, moral, and spiritual well-being." *In re Adoption of A.S.H.*, 674 A.2d 698, 700 (Pa. Super. 1996) (citations omitted); *see also* 23 Pa.C.S. § 2902(a). Finally, when this Court reviews a trial court's "best interests" analysis in adoption matters, our scope of review is as follows:

> An appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the custody order is manifestly unreasonable as shown by the evidence of record will an appellate court interfere with the trial court's determination.

*A.S.H.*, 674 A.2d at 700 (citations and internal quotation marks omitted).

In **In re Adoption of D.M.H.**, 682 A.2d 315 (Pa. Super. 1996), our Court reiterated the appropriate weight to be given to grandparent-grandchild relationships in adoption cases, noting that:

> While [23 Pa.C.S. § 2701 of] the [Adoption] Act does not reflect a preference for a grandparent's adoption, it clearly does not exclude grandparents from being considered as prospective adoptive parents. A grandparent seeking to adopt a grandchild also must indicate his or her relationship to that child in the [p]etition to [a]dopt. 23 Pa.C.S. § 2701(1). This requirement indicates that a relationship between the proposed adoptive parent and the adoptee is a relevant consideration.
>
> **In re Adoption of Hess**, [608 A.2d 10,] 13 [(Pa. 1991)]. There is neither a presumption for, nor a presumption against, grandparents who want to adopt their grandchildren.

**Id.** at 347.

Instantly, S.K. and N.D. fully participated in the adoption hearings. The trial court acknowledged that both parties agree that it is important for M.S.S. to "understand[] his ethnic and cultural background, . . . maintain[] a connection to his natural mother's side of the family [as well as] with his half-sister, and . . . [that his] happiness and security are paramount for [his] long term success." Summary Decision and Order, 8/24/19, at 2-3. Judge Platt also commended S.K. for her perseverance in maintaining contact and visits with M.S.S., as her health permitted. **Id.** at 4. However, despite S.K.'s familial connection to M.S.S. and stalwart efforts to maintain contact with her grandson, the trial judge concluded that adoption by N.D. would benefit M.S.S. the most. To support her decision to grant N.D.'s petition to adopt M.S.S., Judge Platt found that: (1) M.S.S. had a strong preference to be adopted by

- 8 -

N.D., identifying her as his parental figure and someone who will provide a safe, secure and loving home and family life as well as protect and nurture him physically, emotionally, and spiritually; (2) N.D. has been the constant caregiver for M.S.S. for at least 5 of his 8 years of life; (3) N.D. and M.S.S. share a deep and healthy bond; (4) N.D. has provided M.S.S. with a stable and loving environment after he was abandoned by his parents; (5) M.S.S. has a strong attachment with N.D.'s parents who live locally and care for him daily when N.D. works; (6) M.S.S. is receiving the support he needs at school and in the community where he resides with N.D.; (7) N.D. is actively engaged in M.S.S.'s education; (8) because M.S.S. and his half-sister were not raised together and "only recently became re-acquainted," the court would not be "'separating' half-siblings who have never lived together" if it granted N.D.'s petition to adopt; and (9) N.D. was credible in her testimony that she was unaware that S.K. had *court ordered* visitation with M.S.S. as N.D. was not a party to the New York dependency proceedings, Father did not inform N.D. of his legal obligations under New York custody orders, and N.D. did not have S.K.'s contact information. Trial Court Opinion, 12/2/19, at 3-6.

While there certainly is evidence that could support granting S.K.'s petition to adopt, the fact that M.S.S. has been in N.D.'s primary custody since 2015, has been thriving in her care, has had all his needs provided for him by N.D., and where M.S.S. clearly expressed his strong preference to stay with N.D., the scales tip in favor of granting N.D.'s adoption petition. Simply put, N.D. is the only real mother M.S.S. has known. Although never an easy

decision when faced with competing petitions to adopt, Judge Platt's determination that it would be in M.S.S.'s best interest to grant N.D. the right to adopt him is supported by the record evidence. ***A.S.H.***, ***supra***. Judge Platt carefully and compassionately weighed of all relevant factors that bear upon M.S.S.'s physical, intellectual, moral, and spiritual well-being in coming to her decision. ***Id.*** We defer to her findings as a trial judge who has had the opportunity to observe the adoption proceedings and the demeanor of the witnesses. ***Id.*** Accordingly, we find that there was no abuse of discretion and affirm the trial court's orders.[7]

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/20

---

[7] We share in Judge Platt's hope that the parties will maintain a post-adoption relationship, whether they enter into a statutory agreement or take each other at their word. ***See*** 23 Pa.C.S. § 2731-2742 (voluntary agreement for continuing contact after adoption).