674 A.2d 698

### In re ADOPTION OF A.S.H.

**Appeal of Benjamin William FELL and Debra Ann Fell.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed Feb. 22, 1996.

Reargument Denied May 1, 1996.

498

500

Michael Churchill, Philadelphia, for appellants.

Julia Malloy–Good, West Chester, for Darlene Herring, participating party.

Lawrence J. Persick, West Chester, for Chester Co. Children & Youth Services, participating party.

Before McEWEN, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On March 2, 1991, A.S.H. (Alexa) was born to a drug-addicted single mother and an alcohol-addicted single father. On July 5, 1991, the Chester County Department of Children, Youth and Families (CYF) took custody of Alexa, and then immediately placed the child in foster care with appellants William and Debi Fell.[1] Over the next two and one-half years,

---

1. William Fell is a forty-nine-year-old hardware clerk and part-time school bus driver. His wife, forty-year-old Debi Fell, works solely in the home. The Fells, who live in Downington, Pennsylvania, have three biological children ranging in age from thirteen to seventeen. They also recently adopted a three-year-old African–American boy. In addi-

Alexa lived with the Fells. During that time, her natural parents' rights were terminated.

Between 1992 and 1994, a number of Alexa's extended biological family members were considered as adoption resources, but all of the parties involved ultimately withdrew from consideration. When a paternal aunt withdrew in February of 1994, CYF initiated pre-placement visits with a potential adoptive parent, appellee Darlene Herring.[2]

On July 22, 1994, Alexa was placed for adoption with Herring. The Fells immediately filed an emergency petition with the Chester County Juvenile Court of Common Pleas to block the placement. By order dated October 17, 1994, the Juvenile Court denied this petition.

Shortly after this denial, the Fells filed a complaint in federal court alleging a violation of their civil rights. The essence of this complaint was that CYF discriminated against them, on the basis of race, when it allegedly utilized a policy that preferred to place African–American children with African–American adoptive parents.[3] Prior to a federal court determination on the merits, CYF and the Fells entered into a settlement agreement on November 22, 1994. Under this agreement, one Dr. Robert Sadoff was appointed to evaluate the situation and determine the appropriate placement based on the best interests of the child. CYF, the Fells, and counsel for Alexa agreed to be bound by Sadoff's recommendations. While Herring signed the agreement, she specifically refused to be bound by the recommendations.

tion to caring for these four children, the Fells also serve as CYF foster parents. Since 1987, the Fells have had twenty-eight children placed in their care, and they are currently caring for one foster child who is awaiting permanent placement. Debi Fell also baby-sits, four days a week, for a neighbor's three-year-old son.

2. Ms. Herring is a forty-seven-year-old single parent, who lives in Maryland with her mother, Rose, and her adopted six-year-old daughter, Lauren. Herring's mother watches Lauren and Alexa during the daytime, while Herring is at work in Washington, D.C. Herring has been a social worker for the past twenty years and currently works with refugees.

3. Alexa is an African–American child; Herring is an African–American woman; the Fells are a Caucasian couple.

502

In 1995, Dr. Sadoff appointed Dr. Marshall Schecter to evaluate the situation. After review, Dr. Schecter recommended that Alexa be returned to the Fells. Since CYF had agreed to be bound by these recommendations, it notified Herring that it intended to remove Alexa and place her with the Fells.

On July 26, 1995, Herring filed a petition to stay Alexa's removal.[4] Following an August hearing, the Honorable Alexander Endy granted the stay, and ordered that Alexa remain in Herring's custody. Additionally, CYF was ordered to proceed with and consent to Herring's adoption of Alexa. After exceptions were denied, the Fells filed the instant appeal, primarily challenging the trial court's "best interests" analysis.

In reviewing a trial court's "best interests" analysis in custody and adoption matters, our scope of review is as follows:

[[A]n appellate court is] not bound by findings of fact made by the trial court which are unsupported in the record, nor [is it] bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, [an appellate court] defer[s] to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where [it] find[s] that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination.

*Robinson v. Robinson,* 538 Pa. 52, 54–57, 645 A.2d 836, 837–38 (1994) (quoting *Mumma v. Mumma,* 380 Pa.Super. 18, 21, 550 A.2d 1341, 1343 (1988), *appeal denied,* 524 Pa. 629, 574 A.2d 70 (1990)). *See also Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 111, 445 A.2d 1314, 1323 (1982). It is with this scope of review in mind that we address appellants' claims.

---

**4.** While acknowledging that the Fells did not have standing to contest custody by virtue of their relationship as foster parents, the trial court allowed the Fells to participate in the proceedings because of their interest in the federal court settlement agreement. *See* trial court opinion, 9/22/95 at 13.

▬▬▬ In both custody and adoption matters, our paramount concern is the best interests of the child. *E.g., McMillen v. McMillen,* 529 Pa. 198, 200, 602 A.2d 845, 846 (1992); *Sturgeon,* 300 Pa.Super. at 106, 445 A.2d at 1321. *See also* 23 Pa.C.S.A. § 2902(a). This "best interests" determination is made on a case-by-case basis, and requires the weighing of all factors which bear upon a child's physical, intellectual, moral, and spiritual well-being. *E.g., In the Interest of C.F.,* 436 Pa.Super. 83, 89, 647 A.2d 253, 256 (1994). In this case, appellants assert that the trial court made a number of errors, which ultimately led to the incorrect conclusion that it was in Alexa's best interests to remain with Herring.

▬▬▬ Appellants first assert that the trial court erred by not considering Alexa's emotional bond with them. We agree with appellants that the existence of an emotional bond between the child and one of the prospective custodial parents is an important factor. *E.g., In re Davis,* 502 Pa. 110, 139, 465 A.2d 614, 629 (1983). We disagree, however, with appellants' assertion that the trial court failed to consider and properly weigh the existence of any such bond here.

In the trial court's September 22, 1995, opinion, the court has a separate section entitled "Capacity to establish new relationships and quality of bonding." Opinion, 9/22/95 at 17. In that section, the trial court notes that Dr. Schecter found that Alexa had bonded with both Herring and the Fells. While acknowledging a bond with both parties, the court placed greater weight on the bond with Herring. It noted that Alexa called Herring "mommy" and called Herring's mother "grandma." The child also referred to Herring's daughter as "sister." After review, the trial court found that these terms were an indication of the familial relationship that had developed between Alexa and the Herring household. Thus, while the court acknowledged that Alexa had also bonded with the Fells, it placed greater weight on the familial bond with Herring. *Id.* Since the trial court did in fact consider the issue of emotional bonds, and simply chose to place greater weight on the record evidence of the bond with Herring, we cannot agree with appellants that the trial court's

review was erroneous or inadequate. *See Robinson*, 538 Pa. at 56, 645 A.2d at 838 ("On issues of credibility and weight of the evidence, appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses.").

■ Next, appellants assert that the trial court improperly based its conclusions on race. Again, we must disagree with appellants' characterization of the trial court's decision. In its September 22, 1995 opinion, the court briefly addressed the issue of racial and cultural heritage. Opinion, 9/22/95 at 21. The court noted that Herring's experience with African–American culture would be beneficial to Alexa. Contrary to appellants' assertion, this was not the sole basis, or even a substantial basis, for the court's placement decision. The trial court in this case conducted an extensive review of the evidence, with Alexa's best interests in mind, and ultimately concluded that factors such as special needs, emotional bonding, and self-esteem weighed in favor of granting custody/adoption to Herring. *Id.* at 15–20. The mere mention of the respective race of the parties and the possible effects on Alexa's racial and cultural development does not vitiate or nullify the trial court's thorough and thoughtful analysis of a whole host of other factors. Under these circumstances, we simply cannot agree with appellants that the trial court's placement decision was based on race.

■ Appellants also argue that the trial court erred in failing to consider whether Alexa would be able to maintain biological family ties if she lived with Herring. In its September 22, 1995, opinion, the trial court noted that it would be premature to address such an issue at the present stage. Opinion, 9/22/95 at 20. We must agree. Given that Alexa's parents were thoroughly unfit to raise her, and that the other relatives were not prepared to adopt the child, we find that the trial court properly focused on securing the best possible home environment for Alexa, without regard to the geographical location of the extended biological family. As the trial court noted, the issue of contact with biological relatives would

be best addressed by the adoptive parent as the child progresses. *Id.*

 Finally, appellants' claim that the trial court erred in concluding that Herring would provide a better home for the child. After careful review, we must again disagree with appellants. The trial court found that Herring could best provide for Alexa's special needs because of Herring's experience as a social worker and Herring's mother's experience as a school teacher. The court also found that the Fell household was experiencing a certain amount of stress, which could detrimentally affect Alexa. Additionally, the court noted that Herring has only one other child, who is roughly Alexa's age. In contrast, the Fells have three teenage biological children, one three-year-old adopted child with special needs, and a number of temporary foster children. Based on the number of dependents, the trial court simply concluded that Herring was in a better position to give Alexa the attention that she needed. In light of all of the above evidence, we must conclude that the record supports the trial court's determination that Herring could provide a better home for Alexa.

 After reviewing all of appellants' arguments regarding the trial court's "best interests" analysis, it becomes clear that appellants are not arguing that the record does not support a placement with Herring, but rather that the record could equally support a placement with them. On this point, we agree with appellants. This case is a difficult one precisely because Alexa would receive good, loving care in both of these households. Nevertheless, the trial court could only award custody to one party, and it concluded that the scales tipped in favor of Herring. Since the conclusion regarding placement with Herring is supported by record evidence and is not manifestly unreasonable, we simply cannot interfere with the trial court's determination. *See Robinson,* 538 Pa. at 56, 645 A.2d at 838; *Sturgeon,* 300 Pa.Super. at 110, 445 A.2d at 1323.[5]

5. We also note that appellants rely heavily on psychiatric testimony and seem to be arguing that a trial court cannot make any findings in contravention of an expert's conclusions. We remind appellants that the issue of a child's best interests is a legal determination that is

 Appellants' final argument is essentially that the trial court could not place Alexa with Herring because such placement would contravene the 1994 agreement that settled the Fells' federal civil rights lawsuit, as well as the federal court order memorializing that agreement. In *Sturgeon*, this Court stated in the strongest terms that "a child is not a chattel, to be finally disposed of by agreement among the parties." *Id.* at 107, 445 A.2d at 1321. Notwithstanding any prior agreement between the parties, the courts must be guided by their own independent analysis of the best interests of the child. *Id.* (quoting *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974)).

In this case, the trial court properly made an independent inquiry into Alexa's best interests. The court recognized that it was not bound by a 1994 agreement, signed by CYF and the Fells in settlement of a federal civil rights action. In that civil rights case, the focus was on the Fells' rights and not on Alexa's best interests. Since neither CYF's agreement to abide by Dr. Sadoff's conclusions nor the federal court's order memorializing that agreement relieved the trial court of its duty to determine the best interests of the child, we find that the court did not improperly contravene a federal court order or a prior agreement when it analyzed Alexa's best interests and ultimately concluded that Alexa should be placed with Herring.

In sum, we find that the trial court performed a thorough and compassionate evaluation of the evidence, and we find no abuse of discretion. In such a case, we must affirm. *See Robinson*, 538 Pa. at 56, 645 A.2d at 838 ("Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion."); *Sturgeon*, 300 Pa.Super. at 108, 445 A.2d at 1322–23.

Affirmed.

properly made by the trial court, and not by a psychiatrist. *See Commonwealth ex rel. Grimes v. Yack*, 289 Pa.Super. 495, 528, 433 A.2d 1363, 1381 (1981) (holding that the "best interests" of a child "is a legal concept and is not to be defined in psychiatric terms.").