**In re Adoption of B.E.M.A.**

C.P. of Chester County, No. AD-12-0018.

*Deborah A. McKenty*, for Clementine Mary Arnold.
*Craig Bluestein*, for Gerald D. and Margaret Thompson.
*Lawrence J. Persick*, for Chester County Department of Children and Youth Services.
*Jeremiah F. Kane*, for adoptee.

TUNNELL, *J.*, May 9, 2013—In this contested adoption proceeding, the court is called upon to decide whether the adoptee, B.E.M.A., should be adopted by her paternal grandmother, Clementine Mary Arnold, or by her foster parents, Gerald D. and Margaret W. Thompson. The adoptee, now 2 ½ years old, has resided with the latter since her discharge from the hospital where she was born on October 7, 2010.

The biological father is deceased and the parental rights of the mother were terminated by the court on July 3, 2012.

The court heard two days of testimony, on May 1 and May 3, 2012. From the testimony, the court quickly concluded that it is easy to love B.E.M.A. Everyone who has come into contact with her loves her. B.E.M.A. reciprocates easily and naturally with her love.

The court will first address the case presented by Mrs. Arnold. The court is convinced that she is loyal, calm, patient and stable. She raised four boys as a single parent. She has held down a responsible job in the court system

of the City of Philadelphia for over 35 years. She is proud of her Polish heritage which she wants to instill in her extended family. She is in good health, and her hearing loss has not slowed her in the least. She is well known in the area of Queen Village on Beck Street where she lives. There she maintains a comfortable home with a room all prepared for B.E.M.A.

Although Mrs. Arnold initially offered to become a kinship resource for B.E.M.A. after her birth, a number of adverse circumstances caused her to rescind that offer. The court does not fault Mrs. Arnold in the slightest for doing so, although unfortunately it caused an unexpected delay in her ability to establish a relationship with her granddaughter.

Certain attempts were made during the trial to blame Mrs. Arnold for the drug addiction and tragic death of her son, Christopher Arnold, the baby's biological father. This was offered as if to suggest that she had failed in some way as a mother, and that the court should draw an adverse inference in this adoption proceeding. Mrs. Arnold did nothing wrong and the court will not draw any such inference.

Out of sheer tenacity, Mrs. Arnold was finally able to arrange for visits with B.E.M.A., at first supervised and later unsupervised at her home in Queen Village. The court finds that the baby fares well during the visits, although there is some anxiety during transfers which is quite understandable for a child of her age. Mrs. Arnold is now "Babcia" to B.E.M.A., that is, "grandma". B.E.M.A. has

bonded with Brendan and Andrew Arnold, two of Mrs. Arnold's other sons, as well as with the neighborhood children on Beck Street.

The time came when reunification was no longer a goal in the planning for B.E.M.A. Chester County Department of Children, Youth and Families considered who might become a permanent adoptive resource for the child. As testified by its witnesses, CYF went through a lengthy process of assessments and visits which culminated in a 4 ½ hour long selection meeting. The committee members selected Mrs. Arnold over Gerald and Margaret Thompson for a number of reasons. They considered her to be a "viable relative" who maintained an unwavering commitment to raise B.E.M.A. They cited her tenacity, her heritage, the facts that she was herself a mother, had a long-standing job and exhibited other strengths. CYF's witnesses testified that Mrs. Arnold and the baby were bonding nicely, but conceded that they would be surprised and concerned if B.E.M.A. were not by now bonded to the Thompsons. Mrs. Arnold advised CYF, and testified later to the court, that if she is permitted to adopt B.E.M.A. she will certainly keep Mr. and Mrs. Thompson in the child's life.

The court also carefully considered the case presented by Gerald D. and Margaret W. Thompson. They not only showed stability in the length of time they have lived in their home, and in the length of their marriage, but also their talents in the sheltering of foster children. They have had some 16 of them in their home primarily through the auspices of Chester County Department of Children.

Youth and Families. Their recognized strength is in caring for drug-addicted babies. This is how they came to be chosen when B.E.M.A. was born without available family resources. If it takes a special gift to nurse a micro-premature baby, or a drug-addicted infant to health, then the Thompsons surely have it.

Mr. Thompson is a mechanic and Mrs. Thompson is a veterinarian. They and their other children live on a 10-acre farmette which includes a barn, barnyard, llamas, pot-bellied pigs, dogs and cats, lambs, a steer, two ponies and chickens, all fenced in. There is a playset in the front yard. This is the world B.E.M.A. has known all her life. She gets along well with the other children, and refers to Jerry Thompson as "Daddy" and Meg Thompson as "Mommy". By all accounts, the child has bonded to and is affectionate with the Thompsons, and vice-versa. Developmentally, B.E.M.A. is "on target".

Although country life differs from city life, from the testimony the court has heard the home settings are both strong and equivalent. The Thompsons as well as Mrs. Arnold have family and friends to support them and, in the court's estimation, their ability to provide a safe and enriching environment in which to raise B.E.M.A. are both superior. Like Mrs. Arnold, Mrs. Thompson is of Polish extraction. They are both church goers. They both value education. Their approach to discipline is the same.

When it was Mrs. Thompson's turn, she testified that if permitted to adopt B.E.M.A. she would certainly protect the child's relationship with her paternal grandmother,

Mrs. Arnold. Mrs. Thompson stated that she lived with her own grandmother for some years and "understands that bond." She also testified that "no one else can do it — it's incredibly important." Thus, while considering what decision to reach, the court was buoyed by the sworn testimony that the child would not vanish no matter which party prevailed.

One difference was apparent to the court. Mrs. Arnold, as she freely stated, did not understand how the process worked, how CYF was departmentalized, nor whom to call. The Thompsons were very versed in that and were already well known to CYF.

In any event, the court emphasizes that Mrs. Arnold did nothing wrong. Due to events not altogether of her choosing, she could not initially be a kinship resource. Then, at the time of her first visit, she was unfairly accused of breaking the rules by bringing the biological mother to the visit, which was not the case. Meanwhile, the Thompsons were a constant presence in B.E.M.A.'s life. The child regards them today as her parents, naturally enough.

In adoption cases, as in custody matters, the paramount concern of the court is to discern the best interests of the child. *In re: Adoption of A.S.H.*, 449 Pa. Super. 497, 674 A.2d 698 (1996). The determination of what is the "best interests" is made on a case-by-case basis, and requires the trial court to weigh all the factors which bear upon a child's physical, intellectual, moral and spiritual well being. *In the interest of C.F.*, 436 Pa. Super. 83, 89, 647

A.2d 253, 256 (1994).

The existence of an emotional bond between the child and the prospective parents is an important factor. *In re: Adoption of A.S.H., supra.*

There are cases in which the record could equally support a placement with both competing parties. This is one of them. Such cases are difficult precisely because the child will receive good, loving care in both households. Nevertheless, the fact is that the trial court can only grant adoption to one party. *See, In re: A.S.H., supra.* at 701.

Chester County Department of Children, Youth and Families wanted the court to take note of the fact that Mr. and Mrs. Thompson had signed a Resource Parent Agreement in which they acknowledged that CYF had all final responsibility for planning for the child. They acknowledged that if the goal should change to adoption, they could request consideration to be an adoptive resource for the child. They acknowledged "that the ultimate decision rests with the Agency." To the extent that the Agency selected Mrs. Arnold to be the adoptive resource, the Thompsons did not acquiesce in that decision, as they previously promised they would. The court detected that some hostility resulted. But, where there is an assertion that a placement might contravene a prior agreement, the Superior Court has stated in the strongest terms that "a child is not a chattel, to be finally disposed of by agreement among the parties." *Matter of Adoption of Sturgeon,* 300 Pa. Super. 92, 107, 445 A.2d 1314, 1321 (1982). Notwithstanding any prior agreement between the

parties, the court must be guided by its own independent analysis of the best interests of the child. *Id., see also, In re: Adoption of A.S.H., supra.*

Weighing the scales carefully, the balance tips in favor of granting the petition for adoption of Gerald D. and Margaret W. Thompson. Although they are not blood relatives, they are surely parents in every way that matters to this child. Her roots today are very much with her family at the residence of the Thompsons in Cochranville, PA, and this court will not uproot her. There was some suggestion at trial that such removal would not be overly traumatizing to B.E.M.A., but the court does not credit that testimony. The child's best interests are met by her adoption by the Thompsons.

Although Mrs. Arnold will not be able to be "Mommy" to B.E.M.A., she is and will remain "Babcia", a loving grandmother with much to offer, whose spirit, grace and familial links are irreplaceable.

An appropriate order follows.

### FINAL DECREE

And now, May 8, 2013, upon consideration of the petition for adoption of Gerald D. Thompson and Margaret W. Thompson, his wife, and after hearing had thereon, the court having made an investigation to verify the statements in the petition and other facts to give the court full knowledge as to the desireability of proposed adoption; and

The court, being satisfied, finds that the statements

made in the petition are true, that the welfare of the person proposed to be adopted will be promoted, and that the child's best interests will be served, by this adoption and that all requirements of the Adoption Act have been met; and it is hereby

Ordered, adjudged and decreed that Brooklynn Elizabeth Muller Arnold, the person proposed to be adopted, shall have all the rights of a child and heir of Gerald D. Thompson and Margaret W. Thompson, and each of them, the adopting parents and shall be subject to all the duties of such child. When the parents choose a name for her, they may submit an order to the court.