J-S23018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.D.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 696 EDA 2021 |

Appeal from the Order Entered March 16, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-AP-0000340-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: M.R.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 697 EDA 2021 |

Appeal from the Order Entered March 16, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-AP-0001242-2016

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 17, 2021**

Appellant S.B. (Maternal Grandmother) appeals the orders denying her petitions to adopt her six-year-old granddaughter, M.R.M., and four-year-old grandson, J.N.D.B. (collectively, the Children), pursuant to the Adoption Act,

---

[*] Retired Senior Judge assigned to the Superior Court.

23 Pa.C.S.A. §§ 2101-2910. Maternal Grandmother brought the instant petitions after the trial court involuntarily terminated the parental rights of the Children's biological mother and fathers. In denying Maternal Grandmother's adoptions petitions, the court determined it would be in the Children's best interests if they were instead adopted by T.M. and G.M. (Foster Parents), who also filed petitions. After review, we affirm.

The record discloses the following relevant history: The Philadelphia Department of Human Resources (DHS) became involved with the Children in June 2014, when it received a report that M.R.M. had multiple bone fractures to the clavicle and tibia. At the time, M.R.M. was approximately six weeks old, and she was in the care of the biological mother, the maternal uncle, the maternal grandfather and Maternal Grandmother. The court removed M.R.M. from the home and placed her with the Foster Parents. In April 2015, the juvenile court ultimately adjudicated M.R.M. dependent. In November 2016, J.N.D.B. was born and placed with the Foster Parents immediately after leaving the hospital, when he was two days old. J.N.D.B. was adjudicated dependent the following month.

Both Children have remained in the home of the Foster Parents since their original placements. Maternal Grandmother had hoped to be a placement option; however, the juvenile court denied this kinship placement because of Maternal Grandmother's previous history with DHS and her criminal history. In 2005, DHS removed Maternal Grandmother's two

children, including the subject Children's biological mother. Maternal Grandmother ultimately achieved reunification in 2007.

In August 2018, the subject Children's respective dependency cases proceeded to a termination of parental rights hearing, at which point the court terminated the parents' rights and changed goals of the Children's dependency cases from reunification to adoption. In May 2019, Maternal Grandmother filed petitions to adopt the Children; the petitions were amended on September 18, 2019. On January 24, 2020, the Foster Parents filed their petitions for adoption.

The trial court held a hearing on Maternal Grandmother's petitions on March 16, 2021. Among the evidence, the court heard testimony that the Children have resided with the Foster Parents for virtually their entire lives, that they refer to the Foster Parents as "mom and dad" and the Foster Parents' children as their siblings. Conversely, Maternal Grandmother testified that she sought adoption because she was fighting for what she believed was right, that the Children belonged with biological family. Ultimately, the court denied Maternal Grandmother's adoption petitions, finding that it would not be in the Children's best interests.

Maternal Grandmother timely-filed this appeal, wherein she presents the following issues for our review:

1. Did the trial court err in denying Maternal Grandmother's Petition for Adoption?

2. Did the trial court err in finding that the proposed adoption by Maternal Grandmother was not desirable?

3. Did the trial court err in finding that the [C]hildren would be better served by remaining with their foster parents rather than being raised by her biological family?

Maternal Grandmother's Brief at 7.

For ease of disposition, we address Maternal Grandmother's issues contemporaneously. We review adoption matters for an abuse of discretion, in accordance with our well-settled standard of review:

> An appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the [order] is manifestly unreasonable as shown by the evidence of record will an appellate court interfere with the trial court's determination.

*In re Adoption of A.S.H.*, 674 A.2d 698, 700 (Pa. Super. 1996) (citations and internal quotations omitted).

The polestar of adoption proceedings is the best interest of the adoptee. *See In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This "best interests" determination is made on a case-by-case basis and requires the weighing of all factors which bear upon a child's well-being. *A.S.H.*, 674 A.2d at 700 (citations omitted). Under the Adoption Act:

> [t]he court shall hear testimony in support of the [adoption] petition and such additional testimony as it deems necessary to inform it as to the desirability of the proposed adoption. […].

23 Pa.C.S.A.§ 2724(a)

Moreover, Section 2724(b) provides, in relevant part: "In any case, the age, sex, health, social and economic status or racial, ethnic or religious background of the child or adopting parents shall not preclude an adoption but the court shall decide its desirability on the basis of the physical, mental and emotional needs and welfare of the child." If the court is satisfied that the statements made in the adoption petition are true, that the needs and welfare of the person proposed to be adopted will be promoted by the adoption, and that all requirements of this part have been met, the court shall enter an adoption decree. *See* 23 Pa.C.S.A.§ 2902(a).

Instantly, the trial court heard testimony and considered evidence from all interested parties, after which the court concluded that adoption by the Foster Parents would best serve the Children's needs and welfare in accordance with Section 2724(b) of the Adoption Act. On appeal, Maternal Grandmother does not argue that the court's determinations were unsupported by the record. Her only real contention is that the court erred, because she is a biological family member, whereas the Foster Parents are not. She argues that the Adoption Act "is clearly in favor of biological relatives," which she infers from the Act's procedural subtext. *See* Maternal Grandmother's Brief at 22 (citing, e.g., 23 Pa.C.S.A.§ 2531(c), relieving certain blood relatives from having to file a report of intention to adopt.)

On this point, Maternal Grandmother is only partially correct. "We are mindful that, when possible, the preservation of the biological family is the

desired outcome in custody matters. However, the goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the children, but must be weighed in conjunction with other factors." **K.D.**, 144 A.3d at 153 (citing **In re Adoption of G.R.L.**, 26 A.3d 1124, 1127 (Pa. Super. 2011)). In **K.D.** we reversed the orphans' court decision to grant a grandmother's adoption, where the court's best interest analysis only focused on the grandmother's blood relationship with the child and the children youth services agency's purported inaction to facilitate their contact. **Id.** We held that the court ignored much unrebutted evidence that established that it was not in the child's best interest to grant the grandmother's petition. **Id.** Thus, the biological connection between the petitioner and the adoptee is by no means dispositive in a best interests analysis under Section 2724(b) of the Adoption Act.

Here, after conducting a thorough analysis, the trial court concluded the physical, mental and emotional needs and welfare of the Children would be best served by denying the Maternal Grandmother's petitions, notwithstanding their biological connection. Paramount to this decision was that the Children have resided with the Foster Parents practically since birth. M.R.M. entered their care when she was approximately six weeks old, and she has lived with the Foster Family for nearly the last seven years. J.N.D.B. lived with the Foster Parents since he was two days old, and he has been with them for the last four years. The Children have thrived in the Foster Parents' home. The court heard testimony that the Children shared a very loving parent-child bond

with the Foster Parents. The Foster Parents provided the Children with a consistent structure and routine. The Foster Parents were proactive with the Children's medical and educational needs. And the subject Children also share a sibling relationship with the Foster Parents' other children. The court also heard testimony that, given this history, the Children would be emotionally harmed by being removed from the Foster Parents' care.

Notably, Maternal Grandmother did not appear to appreciate the potential harm that would befall the Children if they were removed from the Foster Parents' care. Maternal Grandmother testified that any adverse effect on the Children's removal from their Foster Parents would not be her fault. Maternal Grandmother testified that the Children's removal from their Foster Parents – the only family they have essentially ever known – would be no different than when DHS decided to rip the Children from her family. She also argues that the Children were resilient and would adjust. *See* Maternal Grandmother's Brief at 18. However, Maternal Grandmother conceded that she does not know the Children, nor do the Children know her.

Even aside from the strong relationship the Children had with their Foster Parents, the court had real reservations about Maternal Grandmother's desirability as an adoptive parent. For instance, Maternal Grandmother had a criminal record following a 2005 incident at her child's school, where she apparently drove her minivan into the building to confront the staff, allegedly about her child being bullied. The court was also wary of Maternal Grandmother's parenting, given her previous involvement with DHS during

her children's dependency cases from 2005-2007. By Maternal Grandmother's own admission, her children had anger toward her for the abuse they suffered in her care. At the hearing, the court was unsatisfied by Maternal Grandmother's denials about previous potential for abuse in her home. For instance, there was a 2007 report that Maternal Grandmother endangered her children by allowing them to sleep in the same room, despite allegations that one child had sexually abused the other. Consequently, Maternal Grandmother was placed on the ChildLine[1] registry, but at the hearing she disputed that there was any concern with her care.

More recently, in 2019, Maternal Grandmother also appeared on the Steve Wilkos television show to discuss the injuries that led to M.R.M.'s placement in foster care. The title of the episode was "Who Broke My Baby's Bones?" Not only was Maternal Grandmother indifferent to how this notoriety might negatively affect the Children, but at the hearing she referred to M.R.M.'s injuries as "birth injuries," even though M.R.M. was injured while in Maternal Grandmother's care. Maternal Grandmother testified that she could

---

[1] ChildLine is "[a]n organizational unit of the Department [of Human Services of the Commonwealth] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under section 6332 of the Child Protective Services Law (CPSL) (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. In addition, it also receives reports of student abuse under Subchapter C.1 of the CPSL (relating to students in public and private schools)." 55 PA ADC § 3490.4. Often, "a ChildLine" is shorthand for the report itself.

not say whether the injury was sustained in her home, because "it got swept under the rug" – an apparent reference to her distrust of DHS. Of course, Maternal Grandmother disputed many of these facts both at the hearing and in her Brief. But to that end, we must defer credibility issues to the trial court, which doubted Maternal Grandmother's credibility. **See A.S.H., supra.**

The court also heard testimony about Maternal Grandmother's mental state. Maternal Grandmother admitted to having post-traumatic stress disorder and anxiety; she attributed her anxiety to her unsuccessful efforts to obtain custody of the Children. She conceded she has some behaviors consistent with obsessive-compulsive disorder, though apparently there was never an official diagnosis.

On appeal, Maternal Grandmother challenges these adverse findings by reiterating the arguments she unsuccessfully made before the trial court. Even then, Maternal Grandmother does not argue how the Children's interests would be best served if she were the adoptive parent, only that she would be perfectly capable of caring for them. And again, she grounds her argument in the biological connection that she shares with the Children, providing no relevant legal authority to support her position. What Maternal Grandmother challenges, ultimately, are the weight and credibility of the evidence, but these matters remain directly within the purview of the trial court, sitting as fact-finder, not with this Court. Therefore, we fail to discern how the court's decision was manifestly unreasonable such that our interference would be warranted.

In sum, we conclude the trial court did not err or otherwise abuse its discretion when it denied Maternal Grandmother's petitions for adoption. Although Maternal Grandmother has a biological connection to the Children, that connection must be weighed in conjunction with the Children's bests interests, not elevated above them. After hearing all the evidence and testimony, the court determined that it was in the Children's best interests to be adopted by their Foster Parents, with whom they have lived for practically their entire lives. On appeal, Maternal Grandmother does not allege that the court's decision was without evidentiary support – only that her biological connection to the Children should trump. Such an argument is contrary to our law.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2021